# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DALE K. GULBRANSEN,

    Petitioner,

vs.

FRANKIE SUE DEL PAPA, et al.,

    Respondents.

3: 05-cv-00544-PMP-VPC

**ORDER**

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which Petitioner, a state prisoner, is represented by appointed counsel. The case proceeds on the second amended petition filed December 5, 2005. (Docket #4.) The Court has previously dismissed grounds 3, 7, 8(B), 8(E), and 8(F) after finding that these grounds for relief are procedurally barred. The Court now addresses grounds 5 and 8(G).

## PROCEDURAL HISTORY

On April 16, 1993, Petitioner was charged by way of a criminal complaint with three counts of sexual assault on a minor under fourteen years of age, felony violations of NRS 200.364 and NRS 200.366. Exhibit 6. A preliminary hearing was conducted on July 20 and 22, 1993. Exhibits 7 and 8. On July 26, 1993, Petitioner was bound over to district court for arraignment on all three counts of the criminal complaint. Exhibit 9. On July 30, 1993, a criminal information was filed charging Petitioner with three counts of sexual assault on a minor under fourteen years of age, felony violations of NRS 200.364 and NRS 200.366. Exhibit 11.

/ / /

A jury trial commenced on January 17, 1995. Exhibits 31- 35. On January 23, 1995, the jury found Petitioner guilty of two counts of sexual assault on a minor under fourteen years of age, felony violations of NRS 200.364 and NRS 200.366. Exhibits 37 and 39. The jury found him not guilty on count II. *Id*. On June 12, 1995, the court sentenced Petitioner to serve two concurrent terms of life imprisonment. Exhibit 52. The court filed its judgment of conviction on October 27, 1995. Exhibit 62.

On June 20, 1995, Petitioner filed a notice of appeal. Exhibit 54. The Nevada Supreme Court entered its order dismissing the appeal on January 30, 1997. Exhibit 72. Nearly one year later, on January 23, 1998, the Nevada Supreme Court denied Petitioner's petition for rehearing. Exhibit 83. Remittitur issued on February 2, 1998. Exhibit 85.

On October 12, 1998, Petitioner filed his state post-conviction petition for writ of habeas corpus. Exhibit 99. On December 31, 1998, the district court denied the petition. The court issued its findings of fact, conclusions of law and order on January 19, 1999, which included eighty-four specific findings. Exhibit 107.

Petitioner filed his notice of appeal on January 12, 1999. Exhibit 105. The Nevada Supreme Court issued its order of affirmance on November 14, 2000. Exhibit 107. Remittitur issued on December 12, 2000. Supplemental Exhibit 118.

On January 9, 2001, Petitioner submitted his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (3:01-cv-00028 PMP-VPC, Docket #4.) The Court appointed the Federal Defender to represent Petitioner, and on April 15, 2002, Petitioner filed his amended petition for writ of habeas corpus. (3:01-cv-00028 PMP-VPC, Docket #15.) On May 15, 2002, Respondents filed a motion to dismiss. (3:01-cv-00028 PMP-VPC, Docket #17.) This Court entered an order on March 14, 2003, granting in part and denying in part Respondents' motion to dismiss. (3:01-cv-00028 PMP-VPC, Docket #23.) Following Petitioner's filing of a notice of intent to return to state court to exhaust his unexhausted claims, this Court entered an order on April 21, 2003, administratively closing the case. (3:01-cv-00028 PMP-VPC, Docket #25.)

On February 3, 2004, Petitioner, with the assistance of counsel, filed a second post-conviction habeas petition in the state district court. Exhibit 89 and 90. The district court denied the petition on May 28, 2004, and Petitioner appealed. Exhibit 95 and 111. On June 20, 2005, the Nevada Supreme Court issued an order of affirmance and limited remand to correct the judgment, affirming the order of the district court denying the petition and remanding to correct a clerical error. Exhibit 107.

Petitioner filed a motion to reopen this case on July 22, 2005. (3:01-cv-00028 PMP-VPC, Docket #27.)  The Court reassigned this case the current docket number on October 6, 2005, and on October 7, 2005, reopened the case. (3:01-cv-00028 PMP-VPC, Docket #28, #29; 3:05-cv-00544 PMP-VPC, Docket #1.)

On December 5, 2005, Petitioner filed his second amended petition in this Court. Docket #4. Respondents filed a motion to dismiss on February 27, 2006. (Docket #11.) On June 27, 2007, the Court granted the motion to dismiss, finding that the petition was time-barred. (Docket #24.) Petitioner filed a motion for reconsideration on July 12, 2007, and the Court scheduled a hearing on the matter for January 18, 2008. (Docket #26, #30.) After hearing the arguments of the parties, the Court granted Petitioner's motion for reconsideration and rescinded the order of dismissal. (Docket #32.) The Court ordered Respondents to file an answer within sixty days. *Id*.

On February 4, 2008, Respondents filed a combined motion to stay the Court's order rescinding the order of dismissal and renewed motion to dismiss. (Docket #33.) In their motion, Respondents noted that their original motion to dismiss had been based on three theories: (1) the petition was untimely pursuant to 28 U.S.C. § 2244(d)(1); (2) certain claims in the petition did not relate back to the original petition and thus were untimely pursuant to *Mayle v. Felix*, 545 U.S. 644, 125 S.Ct. 2562 (2005); and (3) certain of Petitioner's claims were procedurally barred. *Id*. Because the Court dismissed the petition based on the first of these three theories, it did not rule on the second and third theories. (Docket #33.) Respondents argued that because of Petitioner's successful motion for reconsideration on the timeliness issue, the second and third theories were no longer

moot and needed to be addressed. *Id.* Therefore, Respondents asked the court to stay its order requiring an answer until it ruled on the remaining theories of their motion to dismiss. *Id.* On September 30, 2008, the Court entered an order granting Respondents' motion for a stay, and finding that Respondents would not be required to file an answer under the Court had ruled on the renewed motion to dismiss. (Docket #43.)

On May 6, 2010, the Court entered an order granting in part Respondents' renewed motion to dismiss. (Docket #47.) In their motion, Respondents argued that grounds 5, 8(B), 8(D), 8(E), and 8(G) were untimely and did not relate back to the original petition. They also argued that grounds 3, 5, 6, 7, 8(B), 8(D), 8(E), 8(F), and 8(G) were procedurally barred. The Court agreed with some of these arguments, dismissing grounds 3, 7, 8(B), 8(E), and 8(F) with prejudice, based on procedural default. *Id.*

The Court, however, reached a different conclusion as to grounds 5 and 8(G). In ground five of the second amended petition, Petitioner alleged violations of his rights to due process, equal protection and a fair trial based on prejudicial information about Petitioner which was not part of the trial record, but which was overheard during trial by jurors sitting on his case. In ground 8(G), Petitioner alleged ineffective assistance of counsel for counsel's failure to investigate while preparing for a new trial, which Petitioner opined would have been the earliest time that the facts regarding this extraneous information could have been discovered.

In affirming the order of the state district court denying Petitioner's second state post-conviction habeas petition, the Nevada Supreme Court held in part as follows:

> Gulbransen's petition was procedurally barred absent a demonstration of good cause and prejudice. [Footnote 6.] "[T]he good cause necessary to overcome a procedural bar must be some impediment external to the defense." [Footnote 7.] Gulbransen argued that his procedural bars should be excused due to newly discovered evidence. Specifically, he alleges that several jurors overheard information that a State witness had observed him masturbating with a broomstick handle in his garage. Gulbransen contends that the jury's exposure to this information, whether true or not, prejudiced him. However, it appears from the record Gulbransen submitted on appeal that he was aware of this new evidence at least by April 2002, yet he waited almost two years to file his second habeas petition. Moreover, the documentation Gulbransen submitted to substantiate his claim is at best contradictory, and therefore we

4

> conclude that Gulbransen fails to demonstrate that the alleged new evidence prejudiced him. [Footnote 8.]   Finally, we conclude that Gulbransen fails to overcome the presumption of prejudice to the State.
>
> Footnote 6: <u>See</u> NRS 34.726(1); NRS 34.810(3).
>
> Footnote 7: <u>Harris v. Warden</u>, 114 Nev. 956, 959, 964 P.2d 785, 787 (1998).
>
> Footnote 8: <u>See generally</u> <u>Hennie v. State</u>, 114 Nev. 1285, 1289-90, 968 P.2d 761, 764 (1998); <u>Funches v. State</u>, 113 Nev. 916, 923-24, 944 P.2d 775, 779-80 (1997).

Exhibit 107, pp. 2-3.

Petitioner argued in opposition to Respondents' renewed motion to dismiss that he was unaware of the basis for grounds 5 and 8(G) at the time he filed his original petition in this Court, but that they were filed in "a timely manner." Thus, in ruling on the renewed motion to dismiss, the Court addressed the application of 28 U.S.C. § 2244(d)(1)(D), which allows a court to review claims which are raised within one year of "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." The Court found as follows:

> Petitioner advises that he was unaware of the facts of this claim until February 19, 2002 when the FPD's investigator conducted interviews of jurors in his case. Because petitioner was not represented by counsel in his post-conviction [proceeding] and he was incarcerated during that time it would have been difficult if not impossible to develop these facts without some outside assistance. Having become aware of the jury issue in 2002, he also would have then become aware of the ineffective assistance of counsel in the motion for a new trial as presented in Ground 8(G). The first amended petition was filed within three months of discovery of the fact and these claims are, therefore, timely.

Docket #47, Order of May 6, 2010, pp. 3-4.

Having found that grounds 5 and 8(G) were timely, this Court next addressed the issue of procedural bar. Acknowledging that Petitioner had suffered procedural default on these and several other grounds, the Court found that review of these claims was foreclosed unless Petitioner could establish either 1) "cause for the default and prejudice attributable thereto," or 2) "that failure to consider [his defaulted] claim[s] will result in a fundamental miscarriage of justice." *Harris v. Reed*, 489 U.S. 255, 262 (1989) (*citations omitted).* The Court reviewed Petitioner's arguments related to

5

cause and prejudice as to grounds 5 and 8, explaining as follows regarding the factual finding of the state court:

> Petitioner argues that he was, in fact, prejudiced by the extrinsic statements made within earshot of the jury and that the state court's fact-finding was not sufficient to support is decision in determining a lack of prejudice arising from the newly discovered evidence. He contends that if the new evidence presented was contradictory, as the Nevada Supreme Court said, an evidentiary hearing would be warranted to determine the credibility of the testifying individuals. Petitioner further argues that the statement made by the various jurors to the FPD investigator and in affidavits was not wholly contradictory, was consistent as to what was heard, but varied as to recollection of what was discussed during deliberations. In fact, petitioner points out, the six jurors all acknowledged that they were aware of some extrinsic evidence in the form of a "sidebar" statement related to petitioner which was overheard by jurors outside the record. [Footnote 1.] According to their statements, some even recalled discussions of the statement during deliberation. [Footnote 2.]
>
> A determination of a factual issue made by a state court shall be presumed correct and the burden of rebutting that finding lies with the petitioner who must do so with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If the applicant challenges the sufficiency of the evidence adduced in the state court proceeding to support the factual finding, petitioner must provide the record pertinent to the factual finding. 28 U.S.C. § 2254(f).
>
> In denying the petitioner's second post-conviction petition, the state trial court made a single specific factual finding based on the affidavits comprising the newly discovered evidence. Exhibit 95, p. 3. That finding was not based upon any independent document found in the trial transcripts or record. Rather it was extracted from the affidavit of juror Daniel Parrott (exhibit 88), which affidavit stands in contrast to the statements of the other jurors. *Cf.* Exhibit 86, Affidavit of Alan Tobin, Exhibits 85 and 87, Affidavits of Sven Nilsson. Petitioner notes there is nothing in the trial record to support Parrot's recollection that the court admonished the jury about what it had overheard and argues that if there was an admonishment off the record, the court acted improperly in withholding the evidence from petitioner. Respondents do not identify anything in the trial record suggesting a warning to the jury, but contend that the court's reliance on the untested affidavit of Parrott submitted by petitioner is sufficient support for the factual determination of the trial court in post-conviction review.
>
> Footnote 1: The statement at issue was made by one of the prosecutors and was related to allegations that petitioner had been discovered by his ex-wife in the garage masturbating with a broom handle. Although this purported event was included in a police report, that report did not become part of the record and no testimony about it was admitted at trial.

> Footnote 2: One juror testified through his affidavit that the judge was told of the extrinsic statement and that the judge admonished the jurors not to rely on or discuss the statement. Exhibit 88. No such admonishment appears in the record.

Docket #47, Order of May 6, 2010, pp. 8- 9.

In addressing the issue of prejudice to overcome the procedural default, this Court explained:

> To demonstrate prejudice, the petitioner must show that the error worked to his "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1980). Such actual and substantial disadvantage would have arisen from the exposure of members of the jury to such prejudicial information as is suggested here. The charges petitioner faced were for perverse sexual acts and the sexual abuse of petitioner's young son. During questioning, the prosecutor attempted to get petitioner to admit to a sexual interest in rectal stimulation. While both he and petitioner expressed disgust at the idea of indoctrinating a young boy into the idea of sexual pleasure derived from rectal stimulation, the suggestion would not have been lost on the jury. This line of questioning would have necessarily been associated with the statements related to petitioner's purported masturbation with a broomstick making the statement's impact potentially extremely negative and prejudicial.

Docket #47, Order of May 6, 2010, p. 10. The Court concluded:

> Because petitioner presented evidence to the state court, which it found to be contradictory and then adopted part as true without first testing the credibility of the statements, and because petitioner was not allowed to develop the facts further through an evidentiary hearing to establish the credibility of the statements made, the state court's factual determination is not reasonable. Petitioner is entitled to an evidentiary hearing to refute the factual finding of the state court as to the existence and impact of extrinsic statements and any admonishment by the court related to the statement, and to establish cause and prejudice to overcome the procedural bar to grounds 5 and 8(G).

Docket #47, Order of May 6, 2010, p. 11.

**EVIDENTIARY HEARING**

The evidentiary hearing was held before this Court on July 30, 2010. At the hearing, Petitioner called as witnesses Ronald Sabol, Robbie Knight, and Betty Shaugnessy, all of whom served as jurors in Petitioner's trial. Mr. Sabol testified that he remembered reference to an incident with a broom handle being used as a sexual tool, but did not remember the details or how it was brought up. Reporter's Transcript of Evidentiary Hearing Held July 30, 2010 ("RT"), 11. He

1 believed that the matter was brought up by a witness who was testifying at trial, but did not
2 remember overhearing any comments by anyone who was not a witness. *Id*. When asked whether
3 the broom handle incident was a topic of discussion during jury deliberations, Sabol testified that
4 after fifteen years he could not remember any specifics, but he was almost positive that it had to be.
5 *Id*. at 12.

6 Robbie Knight testified that she remembered that during the trial, a lady had gotten on the
7 witness stand and testified that the defendant had molested his son with a broom handle. *Id*. at 18.
8 She also remember that a therapist testified that the defendant's son had said he had been molested
9 with a broom handle. *Id*. at 18-19. Ms. Knight stated that the judge never admonished the jury to
10 disregard the evidence about the broom handle, and remembered that the use of the broom handle
11 was discussed during deliberations. *Id*. at 20-21. She testified that it was her understanding that the
12 jury could not consider extraneous comments heard in the courtroom, and that if such comments
13 were heard the jury was to inform the court of it. *Id*. at 22-23. Ms. Knight stated that this situation
14 did not arise during trial and that she did not recall any of the jurors saying that they had overheard
15 anything in the courtroom. *Id*. at 23.

16 Ms. Knight was recalled and testified a second time later in the evidentiary hearing. *Id.* at
17 121. When asked by the Court whether the subject of the broom handle came up during jury
18 deliberations, Ms. Knight answered in the affirmative. *Id.* at 122. She stated that the jurors
19 discussed the broom with the combination of the Vaseline, "because that was brought up a lot." *Id*.
20 at 124. Ms. Knight stated that in her mind, the broomstick was an important issue, because it was an
21 object that was used to abuse the victim. *Id.* When asked whether the Vaseline was important in
22 the dialogue between the jurors in reaching the verdict, Mrs. Knight said that it was "very
23 important." *Id*.

24 Betty Shaughnessy testified that she remembered that the issue of the broom handle was
25 brought up during deliberations, and that two of the other jurors stated that they had overheard a
26 remark by an attorney that someone had walked in and defendant "had a broomstick up his ass." *Id*.

at 29. Ms. Shaughnessy remembered that a least one other juror was adamant about not reporting the incident to the bailiff. *Id*. at 29-30. She stated that the broom handle played no part in her decision making, but was almost sure that it did influence the two women who overheard the comment. *Id.* at 32-33, 39.

Respondents called juror Daniel Parrott as a witness. Mr. Parrott testified that he heard about an alleged incident regarding a broomstick, but did so only after the deliberations were done and the verdict was handed down. *Id*. at 52. He stated that he remembered that a couple of young ladies on the jury thought the jury had done the right thing because of a conversation they had overheard between the attorneys and the judge. *Id.* at 52-53. The comment had to do with the defendant being seen with a broomstick placed in his rectum. *Id*. at 54. Mr. Parrot stated that it was related to him that the comment had been made at a sidebar conference between the attorneys and the judge; it was not an offhand comment in the courtroom by one attorney. *Id*. at 55. Mr. Parrott recalled a jury instruction that the case was to be decided solely on the evidence presented at trial. *Id.* at 57.

Petitioner sought to present the testimony of juror Margaret Annelle Lerner, who was unavailable on the date of the evidentiary hearing, due to medical issues. Petitioner presented the affidavit of investigator Al Tobin, who interviewed Ms. Lerner on July 26, 2010. (Docket #60-1.) In his affidavit and testimony, Mr. Tobin stated in part as follows:

> 9. That Ms. Lerner told me that during the 1995 trial, the trial judge spoke loudly during the sidebars with the attorneys from the defense and prosecution and she sometimes heard bits and pieces of what was being discussed.
> 10. That Ms. Lerner said she specifically recalls the judge forcefully telling the attorneys that they could not bring up questions concerning an allegation involving Vaseline at the defendant's garage at his residence. Ms. Lerner told me that at the time she heard this she assumed the alleged incident was somehow linked to the alleged victim in the case. . . .
> 12. That Ms. Lerner stated she remembered at least one juror mentioned the trial judge's remarks at sidebar while the jury deliberated the ultimate verdict.

*Id.* at p. 2. Petitioner made a proffer as to what testimony Ms. Lerner present if she were available,

/ / /

/ / /

9

1  stating that it would be in line with what was stated in Mr. Tobin's affidavit. RT at 62-63. With the
2  agreement of counsel, the Court accepted the affidavit as what Ms. Lerner's testimony would be. *Id.*
3  at 64.

## DISCUSSION

A federal court will not review a claim for habeas corpus relief if the decision of the state court regarding that claim rested on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 730-31, 111 S.Ct. 2546 (1991). The *Coleman* Court stated the effect of a procedural default, as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman*, 501 U.S. at 750; *see also Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639 (1986). To demonstrate cause for a procedural default, the petitioner must be able to "show that some *objective factor external to the defense* impeded" his efforts to comply with the state procedural rule. *Murray*, 477 U.S. 478, 488 (1986) (emphasis added). For cause to exist, the external impediment must have prevented the petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497, 111 S.Ct. 1454 (1991).

This Court has already found that Petitioner has established the good cause necessary to overcome his procedural default. Order of May 6, 2010, p. 8. To summarize, it is undisputed that Petitioner was unaware until February 19, 2002, of the facts of underlying his claim that prejudicial extrinsic evidence was given to the jury. The facts were not discovered until this Court appointed the Federal Public Defender to represent Petitioner in his federal habeas corpus petition on January 31, 2001. It would have been nearly impossible for Petitioner, an incarcerated person acting without assistance of counsel, to conduct the interviews with the jurors that were necessary to obtain the relevant facts. Petitioner filed his first amended petition on April 15, 2002, which included the

10

1  claim regarding prejudicial extrinsic evidence. This Court entered its order in which it found that
2  claim to be unexhausted on March 14, 2003. As previously explained by this Court, Petitioner could
3  not be certain that he would not obtain a merits review from this Court until that time. Following
4  issuance of this Court's order, Petitioner filed his second post-conviction petition in the state district
5  court on February 3, 2004, raising the disputed claim. Thus, Petitioner has shown a series of
6  objective factors external to the defense which impeded his ability to bring his claim any sooner than
7  he did. He has therefore shown good cause for the procedural default.

8  In order to show prejudice to overcome a procedural default, a petitioner bears the burden of
9  showing not merely that the error created a possibility of prejudice, but that the error worked to his
10 actual and substantial disadvantage, infecting the entire trial with constitutional error. *See Murray v.*
11 *Carrier*, 477 U.S. at 494; *United States v. Frady*, 456 U.S. 152, 170; 102 S.Ct. 1584 (1982).

12 Through the evidentiary hearing in this court, Petitioner was afforded an opportunity to
13 develop the facts supporting his claim that the jury was improperly exposed to extrinsic evidence
14 which had a prejudicial effect. The facts established at the evidentiary hearing by witnesses
15 testifying under oath, are that some fifteen years after the trial, jurors Sabol, Knight, and
16 Shaughnessy remembered being aware of information connecting Petitioner with the use of a
17 broomstick as a sexual tool. Ms. Lerner recalled an interchange between the judge and the attorneys
18 concerning an allegation involving Vaseline at the defendant's garage at his residence, and she
19 assumed the alleged incident was somehow linked to the alleged victim in the case. Mr. Sabol
20 testified that he was almost positive that the broomstick was a topic of discussion during jury
21 deliberations, Ms. Knight remembered that it was discussed during deliberations, Ms. Shaughnessy
22 was almost sure it influenced two women on the jury, and Mr. Parrott stated that two women on the
23 jury thought they had reached the right verdict because of information they had heard regarding the
24 incident with the broomstick. Ms. Lerner remembered that at least one juror mentioned the trial
25 judge's remarks regarding the use of Vaseline in the garage while the jury was deliberating.
26 Reporter's Transcript of Evidentiary Hearing held July 30, 2010.

1    The Sixth Amendment right to a fair trial is a bedrock of criminal law under the United
2 States Constitution. The guarantee within the Sixth Amendment of trial by jury requires the jury
3 verdict to be based on the evidence presented at trial. *Turner v. Louisiana*, 379 U.S. 466, 472-73, 85
4 S.Ct. 546, 549 (1965). This concept "goes to the fundamental integrity of all that is embraced in the
5 constitutional concept of trial by jury." *Id.* at 472. Exposure of the jury to extrinsic information
6 violates that right. *See Jeffries v. Wood*, 114 F.3d 1484, 1490 (9th Cir. 1997) (holding that juror
7 knowledge of a defendant's past criminal record is particularly prejudicial when the past record is
8 related to the crimes for which the defendant is currently on trial), *overruled on other grounds by*
9 *Lindh v. Murphy*, 521 U.S. 320, 117 S.Ct. 2059 (holding AEDPA only applicable to cases filed after
10 the statute's enactment).

11    Based on the facts established in the evidentiary hearing, the Court finds that jurors in
12 Petitioner's case did receive extrinsic information, and that at least some of the jurors were aware of
13 the information both before and during jury deliberations. *See Bayramoglu v. Estelle*, 806 F.2d 880,
14 887 (9th Cir. 1986) (listing factors to be considered in determining whether introduction of extrinsic
15 evidence constitutes reversible error). Further, as discussed in this Court's prior order, actual and
16 substantial disadvantage arose from the exposure of these jurors to the information in question. The
17 charges Petitioner faced were for perverse sexual acts and the sexual abuse of Petitioner's young
18 son. During questioning, the prosecutor attempted to get Petitioner to admit to a sexual interest in
19 rectal stimulation. Although Petitioner denied any such interest, the questioning would naturally
20 make the exposure of jurors to information related to Petitioner's purported masturbation with a
21 broomstick particularly negative and prejudicial. This Court therefore finds Petitioner established
22 facts which demonstrate that he was prejudiced by extraneous evidence heard by the jury.

23    Having found that Petitioner has established both cause and prejudice, this Court concludes
24 that Petitioner has overcome the procedural bar imposed by the Nevada Supreme Court as to
25 grounds 5 and 8(G). In ground 5, Petitioner contends that he was deprived of his Constitutional
26 right to due process, equal protection and a fair trial by an impartial jury because of the jury's

consideration during deliberations of information outside the trial record.

In *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710 (1993), the United States Supreme Court substantially restricted state prisoners' access to federal habeas relief by requiring a showing that the violation of a federally guaranteed right had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S.Ct. 1710, 1714 (1993) (*quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253 (1946)). The Court subsequently explained that "when a habeas court is in grave doubt as to the harmlessness of an error that affects substantial rights, it should grant relief." *O'Neil v. McAnich*, 513 U.S. 432, 445, 115 S.Ct. 992, 999 (1995). In the present case, the Court listened to the testimony of the witnesses at the evidentiary hearing and carefully observed their demeanor. Upon doing so, the Court was impressed with the seriousness that each juror demonstrated in his or her effort to recall events of more than fifteen years ago. Each of the jurors remembered becoming aware of the extraneous information in a different way, indicating that some memories were cloudy. The Court was particularly struck, however, by the fact that, as outlined above, several of the witnesses agreed on the substance of the extraneous information and on the fact that it was discussed during deliberations. In light of the nature of the charges against Petitioner and the nature of the extraneous information in question, the Court finds that it has grave doubts as to whether the exposure of the jury to the information was harmless. Accordingly, this Court concludes that ground 5 of the petition is meritorious and Petitioner is in custody in violation of his rights under the United States Constitution.[1] He is therefore entitled to habeas corpus relief. *See* 28 U.S.C. § 2254.

**IT IS THEREFORE ORDERED** that Respondents' motion to dismiss is **DENIED** as to grounds 5 and 8(G).

/ / /

/ / /

/ / /

---

[1] In light of this conclusion, the court finds it unnecessary to address ground 8(G).

1   **IT IS FURTHER ORDERED** that the petition for writ of habeas corpus is
2   **CONDITIONALLY GRANTED.**   The State of Nevada shall, within one hundred twenty  (120)
3   days of the date of service of this order, either give Petitioner a new trial or release him from
4   custody.
5       **IT IS FURTHER ORDERED** that the clerk shall enter judgment accordingly.
6       **IT IS FURTHER ORDERED** that, within 15 days from the entry of this order, counsel for
7   Respondents shall file in the Eighth Judicial District Court case of *State of Nevada v. Dale K.*
8   *Gulbransen*, 93-C-11412-C, and serve on all parties in that case, notice of entry of this order,
9   including a copy of this order.
10
11  DATED:  August 31, 2010.
12
13                              _____
                                PHILIP M. PRO
14                              United States District Judge